**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| KINGMAN HOLDINGS, L.L.C., as trustee of the PRAIRIE ROCK 1531 LAND TRUST, | § § § § | |
| *Plaintiff,* | § § | Civil Action No.  SA-15-CV-1083-XR |
| v. | § § | |
| U.S. BANK TRUST, NATIONAL ASSOCIATION as trustee of the SRMOF II 2012-1 TRUST, | § § § § § | |
| *Defendant.* | § § | |

## ORDER

On this day, the Court considered the Defendant's Motion to Dismiss (docket no. 3). After careful consideration, the Court will GRANT the motion.

## BACKGROUND

Plaintiff Kingman Holdings, L.L.C. ("Kingman"), as trustee of the Prairie Rock 1531 Land Trust, purchased property located at 1531 Prairie Rock, New Braunfels, Texas, 78130 (the "Property") at auction via a trustee's deed on October 1, 2013.  Docket no. 6-1 at 3. Kingman brings this lawsuit alleging wrongful foreclosure and seeks to enjoin Defendant U.S. Bank Trust, National Association ("U.S. Bank"), as trustee of the SRMOF II 2012-1 Trust, from disturbing Kingman's possession and enjoyment of the Property. *Id.* at 4, 9.  U.S. Bank claims to be the current fee title holder.  Docket no. 3 at 4.

Dossie and Maren Raines purchased the Property and executed a note in the amount of $153,200 (the "Note") from Freedom Mortgage Corporation on July 9, 2008.  Docket no. 3-1

1

at 55.  In exchange for the Note, the Raineses granted a deed of trust for the Property in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") on July 9, 2008.  Docket no. 6-1 at 2–3.  The deed of trust was recorded in Volume 2644, page 298 of the Guadalupe County deed records.  *Id.* at 3.  MERS assigned the deed of trust to Chase Home Finance, L.L.C. ("Chase").  *Id.*  That assignment was recorded in Volume 2757, page 320 of the deed records. *Id.*  Chase subsequently assigned the deed of trust to the Secretary of Housing and Urban Development, which was recorded in Volume 4181, page 845 of the deed records.  *Id.* Finally, the Secretary of Housing and Urban Development assigned the deed of trust to the SRMOF II 2012-I Trust with U.S. Bank as trustee.  *Id.*  That assignment was recorded in the Guadalupe County records as document number 2015010116.  *Id.*

The Property is subject to numerous covenants and restrictions pursuant to the Declaration of Covenants, Conditions and Restrictions for Cap Rock Unit One ("HOA Agreement").  Docket no. 3-1 at 31.  Cap Rock Unit One is a subdivision in Guadalupe County.  Docket no. 3 at 2.  One covenant requires property owners to pay assessments for maintenance of common areas.  Docket no. 3-1 at 43.  If the property owner fails to pay, Caprock Association, Inc. ("HOA"), the homeowner's association established via the protective covenants, has authority to record an assessment lien on homes in the subdivision. *Id.* at 48.  The covenants also provide that a lien may be foreclosed through judicial foreclosure.  *Id.* at 51.  The HOA agreement specifically states that any HOA lien is junior to a bank's mortgage.  *Id.*

The Raineses allegedly failed to pay their maintenance assessments to the HOA. Docket no. 6-1 at 3.  The HOA filed a notice of assessment lien on the Property and then

2

foreclosed on that lien on October 1, 2013. *Id.* Kingman purchased the Property at the foreclosure auction. *Id.* It alleges that it subsequently contacted Chase, "the then-current mortgagee of record, to ascertain what interest, if any, it asserted in the Property or related liens." *Id.* Kingman maintains that Chase did not respond to this communication, which made it "impossible for Plaintiff to know what, if anything, needed to be done to obtain clear title to the Property." *Id.* at 4.

At some point in time, the Raineses defaulted on their mortgage loan. Docket no. 3 at 4. U.S. Bank, once it had been assigned the deed of trust to the Property, foreclosed on the mortage lien and sold the Property to itself via a substitute trustee's deed. Docket no. 6-1 at 4. Kingman alleges that it "expressed a desire to cure any defect and pay the amount in default in order to obtain clear title to the [P]roperty" but that U.S. Bank "failed and/or refused to provide a good faith redemption quote before conducting the foreclosure sale." *Id.* Kingman also explains in its Petition that after it purchased the Property from the HOA at the auction that it attempted to work out an agreement with the Raineses that would allow them to remain on the Property as tenants. *Id.* Eventually, the agreement soured and Kingman sued to evict. *Id.* During this time, Kingman alleges that it did not receive any notices sent by U.S. Bank to the Property because the Raineses would not cooperate with Kingman. *Id.* As a result, Kingman argues that it was not provided adequate notice of the foreclosure by U.S. Bank. *Id.*

Kingman filed its state court petition on October 27, 2015 in the 25th Judicial District of Guadalupe County, Texas. *Id.* at 1. In it, Kingman states a claim for wrongful foreclosure and requested a temporary restraining order. *Id.* at 4, 7. Kingman seeks an injunction to prevent U.S. Bank or its representatives or subsequent assignees from "directly or indirectly

taking, leasing, encumbering, selling, taking possession of, altering, or destroying the Property, reporting the Property for any other sale, or otherwise distributing or attempting to disturb Plaintiffs' peaceable possession and enjoyment of the Property." *Id.* at 9.

On December 7, 2015, U.S. Bank removed the case to federal court, invoking this Court's diversity jurisdiction. Docket no. 1 at 2. U.S. Bank filed its Motion to Dismiss that same day. Docket no. 3. No Response to the Motion to Dismiss was filed and the time for doing so has expired. Per Local Rule 7(e)(2), "[i]f there is no response filed within the time period prescribed by this rule, the court may grant the motion as unopposed." W.D. Tex. Civ. R. 7(e)(2). Given that Kingman did not file a response, the local rule permits this Court to grant U.S. Bank's motion as unopposed. Nonetheless, the Court will independently examine the merits of the motion.

## STANDARD OF REVIEW

If a complaint fails to state a claim upon which relief can be granted, a court is entitled to dismiss the complaint as a matter of law. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief must contain (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed favorably to the plaintiff.

*Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015).  To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id*. A well-pleaded complaint can survive a motion to dismiss even if actual proof of the facts alleged is "improbable."  *Id.* at 556.

### DOCUMENTS THAT MAY BE CONSIDERED

The Supreme Court has held that in deciding a motion to dismiss, a court may consider documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  The court may also consider any documents attached to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (holding that while the court generally must not go outside the pleadings, "the court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'").

### DISCUSSION

Kingman's Original Petition asserts wrongful foreclosure as its sole cause of action. Docket no. 1-3 at 4.  Kingman bases its assertion of wrongful foreclosure on two theories: 1) U.S. Bank did not allegedly provide Kingman with adequate notice, and 2) U.S. Bank has

allegedly failed to produce the "ink-signed Original Note" and thus "has not proved that there was a lawful right to enforce terms within the security instrument."  Docket no. 1-3 at 4.

### I.      Elements of Wrongful Foreclosure

In Texas, "[t]he elements of a wrongful foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Sauceda v. GMAC Mortg. Corp.,* 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.).   In other words, "[a] claim for 'wrongful foreclosure' is not available based merely on showing a defect in the foreclosure process; it is also necessary that there be an inadequate selling price resulting from the defect." *Biggers v. BAC Home Loans Servicing, LP,* 767 F.Supp.2d 725, 729 (N.D. Tex. 2011) (Fitzwater, J.).   Here, while Kingman has alleged that there were procedural defects in the foreclosure sale, it has not alleged that the property was sold for a grossly inadequate price—the Petition states no facts as to the price of the sale at all.  Moreover, it does not allege that there is a causal connection between the defects alleged and any inadequate selling price.  As a result, Kingman has not alleged any facts to support the second and third elements of a wrongful foreclosure claim.

### II.      Notice

Kingman has also failed to allege any facts to support the first element of a wrongful foreclosure claim—that there was a defect in the foreclosure sale proceedings.  Kingman argues that the foreclosure was wrongful because any notice of foreclosure that was sent to the Property was "wrongfully sent" and "never received by [Kingman]" because the Raineses were "uncooperative."  Docket no. 6-1 at 4, 5.  Additionally, Kingman notes that it "does not

reside at or receive mail at the Property" and as a result, "notice should have been given to Plaintiff at Plaintiff's address and not to the previous owners." *Id.* at 5.

A foreclosure sale may be set aside as invalid if the notices required by Chapter 51 of the Texas Property Code are not properly and timely served. *See* Tex. Prop. Code § 51.002(b), (d) (requiring a twenty-days' notice of mortgage default and right to cure and a twenty-one days' notice of sale); *Savers Fed. Sav. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1501 n. 6 (5th Cir. 1989) (recognizing that under Texas law "a sale without the required twenty-one days' notice is invalid or void"); *Ogden v. Gibaltar Sa. Ass'n*, 640 S.W.2d 232, 232–34 (Tex. 1982) (reversing a take-nothing judgment on a wrongful foreclosure claim on the basis that any attempted acceleration was ineffective because the mortgagee did not give proper notice of its intent to accelerate).

Texas Property Code § 51.002(d) provides:

> Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b).

Tex. Prop.Code § 51.002(d).  Once that 20–day notice period expires, notice of the sale must be given at least 21 days before the date of the sale and served "by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt." *Id.* § 51.002(b)(3).

With regard to notice of default and right to cure, the plain language of § 51.002(d) indicates that notice must be sent to "a debtor in default" under an instrument securing real

property "used as the debtor's residence." *See Teachout v. Kitchen*, Civ. A. No. 14–03–00215–CV, 2004 WL 794383, at *2–3 (Tex. App.—Houston [14th Dist.] April 15, 2004, no pet.) (concluding that the Legislature intended section 51.002(d) to apply only to real property currently used as the debtor's residence).  Kingman has not alleged that it is a "debtor in default" on an instrument securing the property as its residence, such that it would be required to be sent notice under § 51.002(d).  In fact, Kingman expressly states in its Original Petition that the Property was not its residence.  *See* docket no. 6-1 ("Further, Plaintiff was the owner of record at the time the foreclosure sale took place, and Plaintiff does not reside or receive mail at the Property.").  Additionally, it has not alleged that it was a "debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt" such that it would be entitled to notice of sale pursuant to § 51.002(b)(3).

The Fifth Circuit has affirmed this interpretation of the statute.  *See Rodriguez v. Ocwen Loan Servicing, LLC*, 306 Fed. Appx. 854, 856 (5th Cir. 2009).  In *Rodriguez*, the Fifth Circuit held that a purchaser similar to Kingman was not a "debtor" within the meaning of the Texas Property Code.  *Id.* at 856.  As a result, the purchaser was not entitled to written notice of default or notice of the sale under § 51.002 and failed to state a claim for wrongful foreclosure.  *Id.* at 856, 857.  Similarly, the Court finds that Kingman—since it did not reside at the Property and is not a "debtor in default" for the purposes of the statute—was not entitled to notice under the Texas Property Code and cannot base a claim of wrongful foreclosure on those grounds.

**III.    "Show-Me-the-Note" Theory**

Kingman also attempts to argue that there was a defect in the foreclosure sale proceedings because U.S. Bank has not produced the "ink-signed Original Note" and thus "has not shown itself to be said Holder and/or the duly authorized representatives of the Holder, and therefore has not proved that there was a lawful right to enforce the terms within the security instrument." Docket no. 6-1 at 6. Kingman asserts that a "foreclosed party has a right to see the ink-signed Original Note in its current state so as to determine who the actual Holder is (or is not)." *Id.* at 5. This is a legal theory colloquially known as the "show-me-the-note" theory. Its supporters argue that "only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure." *Wells v. BAC Home Loans Serv., L.P.*, Civ. Ac. No. W–10–CA–00350, 2011 U.S. Dist. LEXIS 61529, at *5 (W.D. Tex. Apr. 26, 2011).

This theory has been repeatedly rejected by federal courts evaluating Texas law, including this Court. *See, e.g.*, *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 253–54 (5th Cir. 2013); *Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 757–58 (N.D. Tex. 2013); *Seeberger Bank of Am., N.A. Ventures Trust 2013 I.H.R. v. Seeberger*, Civ. Ac. No. EP-14-CV-366-KC, 2015 WL 9200878, at *20 (W.D. Tex. Dec. 16, 2015); *Millet v. JP Morgan Chase, N.A.*, Civ. Ac. No. SA-11-CV-1031-XR, 2012 WL 1029497, at *2–4 (W.D. Tex. Mar. 26, 2012). The Fifth Circuit has held that "[t]he original, signed note need not be produced in order to foreclose." *Martins*, 722 F.3d 249 at 253–54 (5th Cir. 2013). Moreover, it has reaffirmed this unequivocal rejection of the "show-me-the-note" theory each time it has resurfaced. *See Shaver v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, 593 F. App'x 265, 274 (5th Cir. 2014) ("A party does not need the original note bearing the wet-ink signature to

foreclose."); *Casterline v. OneWest Bank, F.S.B.*, 537 F. App'x 314, 316 (5th Cir. 2013) (again holding that the "show-me-the-note" theory has no merit under Texas law).  Simply put, there is simply no requirement in Texas that a foreclosing party produce the original, ink-signed note.  As such, Kingman's claim for wrongful foreclosure based on the "show-me-the-note" theory must fail.

### IV.     Injunctive Relief

Finally, Kingman has requested a permanent injunction prohibiting U.S. Bank from "directly or indirectly taking, leasing, encumbering, selling, taking possession of, altering, or destroying the Property, reporting the Property for any other sale, or otherwise disturbing or attempting to disturb Plaintiffs' peaceable possession and enjoyment of the Property."  Docket no. 6-1 at 9.  However, Kingman's request for an injunction is denied, as its request is not supported by a viable underlying cause of action.  *See Pajooh v. Harmon*, 82 F. A'ppx 898, 899 (5th Cir. 2003); *see, e.g., Von Scheele v. Wells Fargo Bank, N.A.*, Civ. Ac. No. SA–12–CV–00690–DAE, 2013 WL 5346710, at *6 (W.D. Tex. Sept. 23, 2013); *DTND Sierra Investments LLC v. Bank of New York Mellon Trust Co., N.A.*, 958 F. Supp. 2d 738, 752 (W.D. Tex. 2013), *appeal dismissed* (Dec. 20, 2013) ("Because Plaintiff has not pleaded a single viable cause of action, he cannot make this showing and accordingly his request for injunctive relief is dismissed.").

## CONCLUSION

The Court finds that Plaintiff Kingman Holdings, L.L.C., as Trustee of the Prairie Rock 1531 Land Trust, has failed to state a claim on which relief can be granted, and all causes of action and requests for injunctive relief listed in the petition are DISMISSED.

Defendant U.S. Bank Trust, National Association's Motion to Dismiss (docket no. 3) is GRANTED.  The Clerk is directed to enter final judgment pursuant to Rule 58 and to close this case.  Defendant is awarded costs of court and shall file a Bill of Costs pursuant to the Local Rules.

It is so ordered.

SIGNED this 3rd day of February, 2016.


XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

11